TONY FRANCOIS (184100)
BRISCOE PROWS KAO IVESTER & BAZEL LLP
235 Montgomery Street, Suite 935
San Francisco, CA 94104
Tel (415) 402-2700
tfrancois@briscoefirm.com

Attorneys for Proposed Amicus Curia
PROTECTION OF THE EDUCATIONAL RIGHTS OF KIDS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

META PLATFORMS, INC.,

        Plaintiff,

v.

ROB BONTA, in his official capacity as
Attorney General of California,

        Defendant.

No.  5:25-cv-09792-EJD

MOTION FOR LEAVE TO FILE
AMICUS BRIEF AND PROPOSED
AMICUS BRIEF

Date:       May 7, 2026
Time:      9:00 a.m.
Courtroom:  5
Judge:    The Honorable Edward J. Davila

1

**TABLE OF CONTENTS**

I.     MOTION FOR LEAVE TO FILE AMICUS BRIEF ...............................................................4

II.    INTEREST OF AMICUS .......................................................................................................4

III.   ARGUMENT ..........................................................................................................................5

      A.    Social Science Research Confirms What Social Media Executives Admit Publicly: Algorithmic Digital Social Media Feeds Are Addictive and Pose Particular Threats to the Welfare of Children .............................................................5

      B.    The First Amendment Does Not Protect the World's Largest Social Media Platforms Practice of Maximizing the Addictiveness of Feeds Served to Minors ...................................................................................................................8

      C.    Parents Have a Fundamental Right to Regulate Their Children's Education and Formation, Including Their Social Media Consumption ......................................9

IV.    CONCLUSION.......................................................................................................................9

## TABLE OF AUTHORITIES

### Cases

*Pierce v. Society of Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510 (1925) ............... 4, 9

*United States v. Skrmetti*, 605 U.S. 495 (2025) ................................................................... 8

### References

American Psychological Association, *Health advisory on social media use in adolescence* (2023)... 6

J. Fraley, *Social Media Platforms as Publishers: Evaluation the First Amendment Basis for Content Moderation*, The Princeton Legal Journal, Vol. 3 No. 2 (2023)......................................................... 8

Pew Research Center, *Teens, Social Media and Mental Health* (2025) ............................................... 7

Pew Research Center, *Teens, Social Media and Technology* (2024) .................................................... 6

U.S. Surgeon General Advisory, *Parents under Pressure* (2024) ......................................................... 6

AMICUS BRIEF                                                                              NO. 5:25-CV-09792-EJD

### I.   MOTION FOR LEAVE TO FILE AMICUS BRIEF

Protection of the Educational Rights of Kids (PERK) respectfully moves this court for leave to file the following amicus brief in support of the State of California in this case and in opposition to the pending motion for preliminary injunction. The court should grant leave to file PERK's amicus brief because it presents the perspective of parents who are concerned about the welfare of their children, and who have the responsibility to safeguard their children's welfare and to form their character on a virtuous path to adulthood. This path must include mastery of media consumption if children are to grow into responsible, self-governing members of American society. In order to fulfill their responsibilities to their children, parents have a fundamental right, protected by the United States Constitution, to direct and regulate their children's formation and education. *Pierce v. Society of Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510 (1925). This amicus brief presents the perspective of parents, and PERK respectfully requests that the Court grant leave for this brief to be filed.

Defendant Bonta has consented to the filing of this brief.  PERK has requested consent from Plaintiff, but has received no response.  PERK understands that Plaintiff has not objected to previously filed amicus briefs in this matter.  No party's attorney authored this brief in whole or in part or contributed money intended to fund preparing or submitting the brief.

### II.   INTEREST OF AMICUS

PERK is a California non-profit corporation, organized in 2021 in response to the concerns of parents about the medical welfare of their children in California schools. It's mission is to safeguard the educational rights of children, parental rights, and medical freedom for all. PERK firmly believes that the preservation of bodily autonomy is central to the civil liberties and the rights enshrined in the Declaration of Independence, the Nuremberg Code (including Informed Consent), and the United States Constitution. PERK strives to empower parents, educators and professionals to take an active and informed role in protecting their children and their parental rights. PERK provides opportunities to improve understanding and knowledge of policy, legislation, and civic duties through targeted education and skill set building. PERK recognizes and expands upon the innate abilities of constituents, and educates and prepares them in a manner that is conducive to positive

change and productive dialogue. PERK has spent the last five years meeting with legislators, building relationships in Sacramento and pushing forward tirelessly to educate the public on key issues that impact our medical freedom and parental rights. We have stood fearlessly with credibility, equipped with knowledge, and an understanding of our inalienable rights.

PERK supported the California Legislature's passage of SB 976 (2024), and Governor Newsome's signature on the bill. PERK urges the Court to deny the pending motions for preliminary injunction against the addictive feed provisions of SB 976.

## III.    ARGUMENT

**A.    Social Science Research Confirms What Social Media Executives Admit Publicly: Algorithmic Digital Social Media Feeds Are Addictive and Pose Particular Threats to the Welfare of Children**

By now it is an uncontroversial and widely acknowledged truth that digital social media is designed (very effectively) to be addictive to those who consume it, by exploiting a dopamine feedback loop. Given the extensive social science research establishing this point, reinforced by the concessions of industry leaders, the court would be warranted in taking judicial notice of the fact.

Longitudinal cohort data shows increased social media use is positively related to symptoms of psychological distress over time, with stronger relationships reported for girls.[1] Research links teen social media use with depression-related outcomes and identifies elevated risks including self-harm content exposure.[2] Early adolescents are in particular vulnerable to these effects.[3] Researchers have defined social media addiction as "excessive and compulsive usage" that affects functioning, and described platform mechanisms (e.g., infinite scroll/notifications) and teen vulnerability as contributing to such addiction.[4] Algorithmic personalization and variable rewards can leverage

---

[1] I. Thorisdottir, et al., *Longitudinal association between social media use and psychological distress among adolescents*, Prev Med. (2020), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC8389076/.

[2] A Khalaf, et al., *The Impact of Social Media on the Mental Health of Adolescents and Young Adults: A Systematic Review*, Cureus (2023); available at https://pmc.ncbi.nlm.nih.gov/articles/PMC10476631/.

[3] J. Nagata, et al., *Social Media Use and Depressive Symptoms During Early Adolescence*, JAMA Netw Open (2025), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC12096259/.

[4] J. Amirthalingam, A Khera, *Understanding Social Media Addiction: A Deep Dive*, Cureus (2024); available at https://pmc.ncbi.nlm.nih.gov/articles/PMC11594359/

dopamine-based reward learning, making it harder to disengage, especially for adolescents.[5] Addictive use patterns and problematic use trajectories are linked to negative mental health outcomes.[6] And smartphone addiction is associated with poor sleep *independent of duration of use*, which provides direct support for SB 976's nighttime protections and notification limits.[7]

Nor are parental controls a panacea to avoid these harms. Peer pressure predicts adolescent mobile social media addiction, supporting the argument that minors face structural social pressures beyond parental control.[8] Platforms have strong incentives, given the role of addictive use patterns in their business model, to perpetuate those addictive use patterns while appearing to provide parents with tools to prevent them. But unsurprisingly, Meta's own internal research reportedly indicates that its parental supervision/controls may have limited effect on teens' compulsive social media use.[9] And it is widely recognized that parents lack the technological resources that would be useful in keeping up with the platforms on control of addictive feed technology. See, e.g,, U.S. Surgeon General Advisory, *Parents under Pressure* (2024) (describing how digital environments can increase parenting stress and reduce parental capacity)[10]; Pew Research Center, *Teens, Social Media and Technology* (2024) (national data on teen social media use and frequency showing the scale of exposure parents are navigating)[11]; American Psychological Association, *Health advisory on social*

---

[5] D. De, et al., *Social Media Algorithms and Teen Addiction: Neurophysiological Impact and Ethical Considerations*, Cureus (2025), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC11804976/.

[6] H. Shannon, et al., Longitudinal Problematic Social Media Use in Students and Its Association with Negative Mental Health Outcomes, Psychol Res Behav Manag. (2024), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC11011643/.

[7] S. Y. Sohn, et al., The Association Between Smartphone Addiction and Sleep: A UK Cross-Sectional Study of Young Adults, Front Psychiatry (2021), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC7961071/.

[8] X. Xu, et al., Peer pressure and adolescent mobile social media addiction: Moderation analysis of self-esteem and self-concept clarity, Front Public Health (2023), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC10126400/.

[9] https://techcrunch.com/2026/02/17/metas-own-research-found-parental-supervision-doesnt-really-help-curb-teens-compulsive-social-media-use/

[10] Available at https://www.hhs.gov/sites/default/files/parents-under-pressure.pdf.

[11] Available at https://www.pewresearch.org/internet/2024/12/12/teens-social-media-and-technology-2024/.

NO. 5:25-CV-09792-EJD

*media use in adolescence* (2023) (professional guidance recommending developmentally appropriate safeguards and shared responsibility beyond parents alone)[12].

Given this wealth of social science research demonstrating the dangers of addictive social media feeds to children, it is no surprise that platform founders and executives admit the same thing. Sean Parker, a Facebook insider, admitted as long ago as 2017 that the product was built to maximize time and attention by triggering "dopamine-driven feedback loops" to exploit psychological vulnerabilities and social validation dynamics.[13] The same year, former Facebook Vice President for User Growth, Chamath Palihapitiya, confessed "tremendous guilt" over Facebook's effect. "The short-term, dopamine-driven feedback loops that we have created are destroying how society works[.]"[14]And recent evidence in an ongoing trial in Los Angeles against Meta revealed that Nick Clegg, then vice president of global affairs for Meta, said that internal policies make it "difficult to claim we are doing all we can."[15]

The CEO of TikTok, meanwhile, does not let his own children use the platform.[16]

For all of these reasons, parents have ever growing concerns for the welfare of their children in the face of being technologically outgunned by addictive social media platforms, and a strong interest in appropriate assistance in controlling the impact of those platforms on their children's welfare. See, e.g., Pew Research Center, *Teens, Social Media and Mental Health* (2025) (national survey data on parent concerns about teen mental health and social media's role).[17]

---

[12] Available at https://www.apa.org/topics/social-media-internet/health-advisory-adolescent-social-media-use.

[13] https://www.axios.com/2017/12/15/sean-parker-unloads-on-facebook-god-only-knows-what-its-doing-to-our-childrens-brains-1513306792

[14] https://www.washingtonpost.com/news/the-switch/wp/2017/12/12/former-facebook-vp-says-social-media-is-destroying-society-with-dopamine-driven-feedback-loops/.

[15] https://www.reuters.com/sustainability/society-equity/metas-zuckerberg-faces-questioning-youth-addiction-trial-2026-02-18/.

[16] https://www.reuters.com/technology/shou-zi-chew-who-is-tiktok-ceo-testifying-before-congress-2023-03-23/.

[17] Available at https://www.pewresearch.org/internet/2025/04/22/teens-social-media-and-mental-health/.

**B.       The First Amendment Does Not Protect the World's Largest Social Media Platforms Practice of Maximizing the Addictiveness of Feeds Served to Minors**

Plaintiff(s) couch their arguments for injunctive relief on the central claim that their well-honed and highly lucrative algorithmic methods of addicting children to their feeds is itself expressive speech protected by the First Amendment.

This is not a correct understanding of the issue. It is tantamount to saying that First Amendment strict scrutiny applies to the production and sale of fortune cookies because fortune cookies have expressive printed fortunes in them. Or that prescription drugs are exempt from effective state regulation in the public interest because they are sold with package inserts that advise patients of the various risks associated with those drugs. And yet nobody would reasonably argue that an entity like Purdue Pharmaceuticals, widely vilified and held liable for the irresponsible distribution of addictive prescriptive pain medications (contributing substantially to the ongoing opioid crisis in this nation) would have been immune from appropriate regulation of its addictive products merely because it its marketing plan was "expressive speech."[18]

Algorithmic digital social media feed technology should *not* be understood as First Amendment protected speech, but as a potent technology for exploiting human brain chemistry to addict users. Thus, properly understood, algorithmic digital social media feed technology is well within the category of addictive goods in commerce which the police power authorizes states to regulate to protect users, particularly children. *See, e.g.*, *United States v. Skrmetti*, 605 U.S. 495, 522-25 (2025).

This reality distinguishes algorithmic digital social media feed technology from traditional non-addictive means of distribution of news, educational information, and entertainment material (including traditional internet publication of such material without algorithmic social media feed technology) of the kind always afforded First Amendment protection, and erroneously relied upon

---

[18] The argument that the design of addictive digital feeds is "expressive speech" is also remarkable given the various platforms' insistence over recent years that they do not engage in editorial control of posts on their platforms, and therefore cannot be held liable for the content of those posts. It strains reason to claim both that they have nothing to do with the posts, but that their method of addicting adolescents to feeds of the same posts is First Amendment protected "expressive speech." See generally J. Fraley, *Social Media Platforms as Publishers: Evaluation the First Amendment Basis for Content Moderation*, The Princeton Legal Journal, Vol. 3 No. 2 (2023) (platforms do not have a First Amendment interest in content moderation).

8

by plaintiffs.

**C.      Parents Have a Fundamental Right to Regulate Their Children's Education and Formation, Including Their Social Media Consumption**

Parents have a fundamental constitutional right to direct the upbringing and education of their children, rooted in the Fourteenth Amendment's Due Process Clause. *Pierce v. Society of Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510 (1925). SB 976 is a reasonable regulation, within the State of California's police power, to protect this fundamental right of parents by curbing the power of other private parties (social media platforms deploying addictive digital feeds) from usurping that right through technological means.

In this regard, SB 976 functions similarly to many state laws which protect the constitutional rights to private citizens from other private parties. For example, state employment discrimination laws authorize the state to take action against private employers who violate the constitutional rights of their employees to be free from racial discrimination. Employers and others are not able to "back door" their way into racially discriminatory practices by asserting that their encroachment on others' right to be free of racial discrimination is merely the result of "expressive speech" embedded in discriminatory hiring procedures.

## IV.      CONCLUSION

The motions for preliminary injunction should be denied. SB 976 protects children from well-established psychological risks and harms, does not infringe on First Amendment protected activity, and vindicates the fundamental constitutional right of parents to direct their children's upbringing and education.

DATED: March 23, 2026

BRISCOE PROWS KAO IVESTER & BAZEL LLP

By: _____

Tony Francois
Attorneys for Defendant PROTECTION OF THE
EDUCATIONAL RIGHTS OF KIDS