Isaac D. Chaput (Bar No. 326923)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
(415) 591-6000
ichaput@cov.com

Alexander L. Schultz (Bar No. 340212)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, California 90067-4643
(424) 332-4800
aschultz@cov.com

Mark W. Mosier (pro hac vice)
Teena-Ann V. Sankoorikal (pro hac vice)
Jeffrey E. Sandberg (pro hac vice)
Kuntal V. Cholera (pro hac vice)
Alexandra J. Widas (pro hac vice)
**COVINGTON & BURLING LLP**
850 Tenth Street, NW
Washington, D.C. 20001
(202) 662-6000
mmosier@cov.com
tsankoorikal@cov.com
jsandberg@cov.com
kcholera@cov.com
awidas@cov.com

*Attorneys for Plaintiff Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| META PLATFORMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROB BONTA, in his official capacity as Attorney General of California, <br><br> Defendant. | Case No.:  5:25-cv-09792-EJD <br><br> **PLAINTIFF META PLATFORMS, INC.'S MOTION FOR INJUNCTION PENDING APPEAL** <br><br> Date:  TBD <br> Time:  TBD <br> Judge:  Honorable Edward J. Davila <br> Dept.:  Courtroom 4 – 5th Floor |

**TABLE OF CONTENTS**

NOTICE OF MOTION ........................................................................................................... 1

RELIEF SOUGHT ............................................................................................................... 1

INTRODUCTION ............................................................................................................... 1

    I.      Meta Has Raised Serious Questions Going To The Merits. .................................. 3

           A.      This Is a First Amendment Case. ................................................... 4

           B.      SB 976 Triggers, and Fails, Heightened Scrutiny ....................................... 6

    II.     Meta Faces Irreparable Injury Without an Injunction ............................................ 7

    III.    The Remaining Factors Also Support an Injunction Pending Appeal. ................... 7

CONCLUSION .................................................................................................................... 8

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                   <u>Page(s)</u>

*Alliance for the Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011) ...................................................................................2, 3

*Am. Beverage Ass'n v. City & Cnty. of S.F.,*
    2016 WL 9184999 (N.D. Cal. June 7, 2016) ............................................................1, 7

*Arizona Mining Reform Coal. v. U.S. Forest Serv.,*
    172 F.4th 641 (9th Cir. 2026) ..........................................................................................3

*California Chamber of Com. v. Council for Educ. & Rsch. on Toxics,*
    29 F.4th 468 (9th Cir. 2022) ...........................................................................................7

*Cinevision Corp. v. City of Burbank,*
    745 F.2d 560 (9th Cir. 1984) ...........................................................................................4

*Cmty. House, Inc. v. City of Boise,*
    490 F.3d 1041 (9th Cir. 2007) .........................................................................................8

*Doe v. Harris,*
    772 F.3d 563 (9th Cir. 2014) .......................................................................................6, 8

*Elrod v. Burns,*
    427 U.S. 347 (1976)..........................................................................................................7

*Feldman v. Ariz. Sec'y of State's Office,*
    843 F.3d 366 (9th Cir. 2016) ...........................................................................................3

*Free Speech Coal., Inc. v. Paxton,*
    606 U.S. 461 (2025)..........................................................................................................6

*Martin v. City of Struthers,*
    319 U.S. 141 (1943)..........................................................................................................4

*Meinecke v. City of Seattle,*
    99 F.4th 514 (9th Cir. 2024) ............................................................................................6

*Moody v. NetChoice, LLC,*
    603 U.S. 707 (2024)......................................................................................................2, 5

*NetChoice v. Bonta,*
    761 F. Supp. 3d 1232 (N.D. Cal. 2025) ........................................................... *passim*

*NetChoice, LLC v. Bonta,*
    152 F.4th 1002 (9th Cir. 2025) ................................................................................5, 7, 8

*Protect Our Water v. Flowers,*
    377 F. Supp. 2d 882 (E.D. Cal. 2004)..............................................................................2

*Recycle for Change v. City of Oakland,*
    856 F.3d 666 (9th Cir. 2017) ...................................................................................................4

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015)...................................................................................................................6

*Smith v. Helzer,*
    95 F.4th 1207 (9th Cir. 2024) ...................................................................................................6

*United States v. California,*
    173 F.4th 1060 (9th Cir. 2026) .......................................................................................3, 7, 8

*X Corp. v. Bonta,*
    116 F.4th 888 (9th Cir. 2024) ...................................................................................................8

*Yim v. City of Seattle,*
    63 F.4th 783 (9th Cir. 2023) ....................................................................................................6

**Statutes**

Cal. Health & Safety Code §§ 27001, 27002...................................................................................1

**NOTICE OF MOTION**

Plaintiff Meta Platforms, Inc. ("Meta") will submit an amended notice of motion setting forth the date and time for hearing, if one is set by the Court.

**RELIEF SOUGHT**

Meta has appealed this Court's August 5, 2026, order denying its motion for preliminary injunction. ECF 126 ("Order"). Pursuant to Federal Rule of Civil Procedure 62(d), Meta now moves this Court for an injunction pending appeal prohibiting Defendant from enforcing against Meta the following provisions in California Senate Bill 976 (2024) ("Act" or "SB976"): Cal. Health & Safety Code §§ 27001, 27002(b)(2), (4) ("Personalized Feed Restrictions"). An injunction pending appeal will prevent irreparable harm to Meta, including its loss of First Amendment freedoms, and will maintain the status quo ante while facilitating the Ninth Circuit's expedited appellate review.

On August 7, 2026, at approximately 9:29 a.m., Meta requested that Defendant enter into a joint stipulation requesting the relief sought in this motion. On August 10, 2026, at approximately 4:28 p.m., Defendant declined to so stipulate, and also refused Meta's alternative request for 30 days' notice before initiating any enforcement action.

Meta respectfully requests a ruling from this Court on its motion by the close of business on Tuesday, August 18, 2026, after which point it intends to move for an injunction pending appeal in the United States Court of Appeals for the Ninth Circuit.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

The Federal Rules of Civil Procedure authorize district courts to "grant an injunction" while "an appeal is pending from an interlocutory order . . . that . . . refuses . . . an injunction." Fed. R. Civ. P. 62(d); *see also* Fed. R. App. 8(a)(1)(C) ("district court [can issue] . . . an order . . . granting an injunction while an appeal is pending"). As this Court has recognized, the Federal Rules anticipate circumstances in which a district court should "issue an injunction pending appeal even when it 'believe[s] its analysis in denying preliminary injunctive relief is correct.'" *NetChoice v. Bonta*, 761 F. Supp. 3d 1232, 1235 (N.D. Cal. 2025) (quoting *Am. Beverage Ass'n v. City & Cnty. of S.F.*, 2016 WL 9184999, at *2 (N.D. Cal. June 7, 2016)).

1

For the same reasons that this Court issued an injunction pending appeal in the *NetChoice* case, it should also do so here. The Court's Order holding that SB 976's personalized feeds restrictions are not subject to First Amendment scrutiny because Meta is "[un]likely to succeed in showing [its] personalized feeds are 'expressive,'" Order at 9, again "rul[es] on an admittedly difficult legal question" and "chart[s] a new and unexplored ground" in resolving it. *NetChoice*, 761 F. Supp. 3d at 1236 (quoting *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004)). As this Court recognized, the "First Amendment issues raised by SB 976 are novel, difficult, and important, *especially the law's personalized feed provisions*"—the very provisions at issue here. *Id.* (emphasis added). Further, as the Order observes, the Supreme Court's opinion in *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), contains "sweeping language" that at a minimum "could be interpreted as saying that all acts of compiling and organizing speech, with nothing more, are protected by the First Amendment." Order at 5. If the Ninth Circuit were to adopt that straightforward reading of *Moody*, the First Amendment would apply to this case. Although the Court's Order ultimately concludes that Meta is unlikely to succeed in demonstrating that its feeds are expressive—a conclusion with which Meta respectfully disagrees—at a minimum Meta's arguments raise "serious questions going to the merits." *NetChoice*, 761 F. Supp. 3d at 1236 (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011)).

Also, just as before, the remaining considerations "tip sharply in favor of an injunction" pending appeal. *Id.* "[I]f [Meta] is correct in its argument, the public interest would tip sharply in its favor because there is a strong interest in maintaining a free flow of speech," *id.*, particularly given that "billions of people globally use Meta's services to share ideas" as they are "among the most prominent places for people to connect with each other, exchange views, learn, and much more," Order at 1–2. As confirmed by the accompanying declaration of Lars Backstrom, absent an injunction pending appeal, Meta will be forced "to make significant changes to [its] feeds"—changes that will "fundamentally reorient [Meta's] relationship with [its] users." *NetChoice*, 761 F. Supp. 3d at 1236; *see* Backstrom Decl. ¶¶ 2–15. In short, "[Meta] and the community will suffer great harm from the law's restriction of speech." *NetChoice*, 761 F. Supp. 3d at 1236. Under these circumstances, "there is great value in testing the law through appellate review" and preliminarily enjoining SB 976's novel constraints upon the "free flow of speech" pending the outcome of that process. *Id.*

This Court should grant a full injunction pending appeal. In *NetChoice*, this Court entered a limited 30-day injunction lasting only as long as was necessary for the Ninth Circuit to rule on whether to grant its own injunction pending appeal. The Ninth Circuit summarily granted that relief in favor of NetChoice following expedited emergency briefing. *See* Jan. 28, 2025 Order, *NetChoice v. Bonta*, No. 25-146 (9th Cir.), Dkt. 11 at 1 ("Appellee [Bonta] is enjoined from enforcing California Senate Bill 976 while this appeal is pending."). Meta respectfully submits that, rather than requiring the Court of Appeals to undertake the same analysis in an emergency posture, this Court should issue its own full injunction pending appeal, so that the parties and the Ninth Circuit can focus on resolving the expedited appellate briefing on the merits.

## ARGUMENT

Meta meets all four factors governing the issuance of an injunction pending appeal: (1) likelihood of success on the merits of the appeal; (2) the likelihood of irreparable harm absent an injunction; (3) the harm to opposing parties; and (4) the public interest. *United States v. California,* 173 F.4th 1060, 1066 (9th Cir. 2026); *Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 367 (9th Cir. 2016) (en banc). And where, as here, the "hardship balance . . . tips sharply" in the movant's favor, Meta need only show "serious questions going to the merits." *Arizona Mining Reform Coal. v. U.S. Forest Serv.*, 172 F.4th 641, 653 (9th Cir. 2026).

## I.     Meta Has Raised Serious Questions Going To The Merits.

Meta has raised "serious questions going to the merits" of its First Amendment challenge. *NetChoice*, 761 F. Supp. 3d at 1236 (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1134–35). As explained more fully in Meta's preliminary injunction briefing, SB 976 implicates the First Amendment for two independent reasons: it burdens Meta's right to disseminate protected third-party expression *and* burdens Meta's ability to curate that third party expression to create its own expressive products. ECF 19 at 10–13. Because both burdens are content-based, SB 976 triggers strict scrutiny, which it cannot survive because its restrictions on personalized feeds are not necessary to achieve a compelling state interest. *Id.* at 16–24. But even if only intermediate scrutiny were to apply, SB 976 would still fail because it does not substantially relate to an important government interest unrelated to the suppression of protected speech. *Id.* at 20–24.

**A.    This Case Directly Implicates Meta's First Amendment Rights.**

"The first step of First Amendment analysis is to determine whether the [challenged] regulation implicates protected expression." *Recycle for Change v. City of Oakland*, 856 F.3d 666, 669 (9th Cir. 2017).  In this case, this Court ruled against Meta on a single ground:  Meta is "[un]likely to succeed in showing [its] personalized feeds are 'expressive'" so the First Amendment does not apply at all.  Order at 9.

As Meta previously explained, binding precedent confirms that a party has a separate and independent First Amendment right to disseminate protected speech even when it is expressing no message of its own. *See* ECF 19 at 10; ECF 89 at 3–4.  The Supreme Court has long recognized that the "right of freedom of speech … embraces the right to distribute" third-party speech. *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943); *see id.* (act of "delivering a leaflet" is protected).  And the Ninth Circuit has explained that a disseminator of third-party speech still "further[s] a First Amendment interest in making protected materials available to the public" *even* "*if they are not 'expressing' themselves.*" *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 568 (9th Cir. 1984) (emphasis added).

There is no dispute that Meta's feeds distribute protected third-party speech:  the State itself admits that social media services are an "important tool for communication and information sharing" in today's society.  SB 976, § 1(a).  Likewise, as the Court observed, "billions of people globally use Meta's services to share ideas" and "engage in debates about an array of topics ranging from politics to favored vacation destinations."  Order at 1.  Thus, like booksellers, concert venues, and other traditional private fora, Meta serves as a "clearinghouse" for private speech and, as such, enjoys the "right[] to promote [the] protected expression" of others. *Cinevision*, 745 F.2d at 568.  There is also no dispute that, by restricting Meta's dissemination of personalized feeds, the Act necessarily restricts the dissemination of protected speech.

In its Order, the Court suggested that the First Amendment cannot apply unless a human at Meta specifically selects a category of posts to distribute.  Order at 9, 13 (Meta itself must "'fill in the blank,' as Bonta argues").  But *Cinevision* makes clear that this rationale does not work in the context of a party's right to disseminate protected speech:  the First Amendment does not "require a bookseller to read all of the books he plans to sell or a theater owner to view all of the movies he intends to show" for his

distribution of those materials to qualify for First Amendment protection.  745 F.2d at 568–69.  The Act thus triggers First Amendment scrutiny for this reason alone.  *See id.*

In any event, this case squarely presents another serious First Amendment question:  Does SB 976 interfere with Meta's editorial rights to determine not only "which third-party content those feeds will display, [but also] how the display will be ordered and organized," *Moody*, 603 U.S. at 740?  Under *Moody*, the answer is yes:  how Facebook "prioritize[s] . . . posts in its News Feed," including "prioritization of content[] achieved through the use of algorithms," "receive[s] First Amendment protection."  *Moody*, 603 U.S. at 718, 734, 740.  At a minimum, as the Court recognized, this is a serious, open question because *Moody* at least "could be interpreted as saying that all acts of compiling and organizing speech, with nothing more, are protected by the First Amendment."  Order at 5.  If the Ninth Circuit adopts the interpretation of *Moody* that this Court's order describes as an open question, Meta's personalized feeds *would* be considered expressive.  *See NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1014 (9th Cir. 2025) (recognizing that the "particular platforms' feeds" on "Facebook[] and Instagram" may be "expressive").  That, too, is a serious question going to the merits.

Although this Court resolved that question by deeming *Moody* inapplicable if a statute restricts how a feed "personalizes" content rather than how it "moderates" content, Order at 10–17, *Moody* itself drew no such distinction.  *Moody* instead stated that "Facebook's News Feed . . . [is based on] prioritization of content, achieved through algorithms" and how Facebook "prioritize[s] . . . posts in its News Feed" "receive[s] First Amendment protection."  603 U.S. at 710, 718.  *Moody* also focused on whether the "feeds as a whole" are expressive, in which case they "receive First Amendment protection."  *Id*. at 739–40; *see id.* at 738 (the question is whether the "choices [underlying a feed] *in the aggregate* . . . give the feed a particular expressive quality" (emphasis added)).  Here, the Ninth Circuit could agree that Meta's "feeds as a whole" are expressive for the same reasons that *Moody* did:  Meta's "Community Standards . . . make a wealth of user-agnostic judgments about what kinds of speech, including what viewpoints, are not worthy of promotion" and "those judgments show up in Facebook's . . . main feeds."  *Id.* at 736 n.5; ECF 19 at 4–6 (discussing how content moderation impacts Meta's feeds).  Further, as the record reflects, Meta's editorial decisions to disseminate personalized content on feeds are based on metrics *beyond* just

the predicted interests of an individual user. *See* ECF 19 at 11–12 & n.2 (explaining how Meta's algorithms are also designed to promote new content from small creators).

**B.  SB 976 Triggers, and Fails, Heightened Scrutiny.**

Given that Meta has demonstrated "a colorable claim that its First Amendment rights . . . are threatened with infringement," the burden "shifts to the [State] to justify the restriction on speech." *Smith v. Helzer*, 95 F.4th 1207, 1214 (9th Cir. 2024).  The State cannot carry its burden.

As explained in Meta's preliminary injunction briefing, the Act's personalized feed restrictions, as applied to Meta, are subject to strict scrutiny because the Act is content-based—both through its text (which expressly discriminates against user-generated content, § 27000.5(a)) and by reference to its "purpose and justification" (to restrict user content that the Act's sponsors described as disfavored and allegedly harmful). *Reed v. Town of Gilbert*, 576 U.S. 155, 163–66 (2015); *see* ECF 19 at 12–15; ECF 89 at 12–15.  But whether strict or intermediate scrutiny applies, the Act's personalized-feed restrictions do not survive review at any step in the analysis.   The State's interests in enacting these restrictions are not "unrelated to the suppression of free speech." *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 471 (2025).  The State has not established that the restrictions "will in fact alleviate" the alleged psychological harms in "a direct and material way." *Doe v. Harris*, 772 F.3d 563, 577 (9th Cir. 2014) (similar).  The State cannot refute that the Act is severely "underinclusive," *Yim v. City of Seattle*, 63 F.4th 783, 794 (9th Cir. 2023), including by exempting all feeds of *non-user generated* content even if they are otherwise personalized in the exact same way.  And the Act's restrictions "burden substantially more speech than necessary," *Free Speech Coal.*, 606 U.S. at 471, including by extending indiscriminately across all minors of all ages and without regard to whether they are allegedly harmed by personalized feeds or whether they may benefit from them.  Any of these reasons is sufficient to hold that the Act fails heightened scrutiny under the First Amendment. *See* ECF 19 at 20–24; ECF 89 at 15–19.

*    *    *    *

For these reasons, Meta is likely to succeed on the merits that the Act's personalized feed restrictions violate the First Amendment.  And even if the Court disagrees with Meta on the merits, Meta certainly meets the low bar "of making a *colorable* claim that its First Amendment rights have been infringed, or are threatened with infringement." *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir.

2024) (emphasis added) (citation omitted).  In light of that standard, an injunction pending appeal is "appropriate" here "even if the Court believed its analysis in denying preliminary injunctive relief is correct." *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 2016 WL 9184999, at *2 (N.D. Cal. June 7, 2016) (cited in *Bonta*, 761 F. Supp. 3d at 1235).

**II.      Meta Faces Irreparable Injury Without an Injunction.**

The next consideration—whether failure to grant an injunction pending appeal would cause irreparable injury—cuts sharply in Meta's favor. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Bonta*, 152 F.4th at 1024 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Because Meta is likely to prevail on—and at minimum has established serious questions going to the merits of—its First Amendment claim, it has also established irreparable harm.  *See California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022) (recognizing that irreparable harm "is relatively easy to establish in a First Amendment case" because "[t]he plaintiff need only demonstrate the existence of a colorable First Amendment claim.").

Further, as this Court previously recognized, if Meta is correct that SB 976's personalized feed provisions violate the First Amendment, then "[Meta] and the community will suffer great harm from the law's restriction of speech." *Bonta*, 761 F. Supp. 3d at 1236.  That is particularly so given that "billions of people globally use Meta's services to share ideas" as they are "among the most prominent places for people to connect with each other, exchange views, learn, and much more." Order at 1–2.  That harm is not purely notional.  To avoid the risk of enforcement, Meta would have to fundamentally transform its services—including "pervasive changes to the design and operation of Meta's Facebook, Instagram, and Threads services" that will "severely restrict Meta's ability to present affected users with content that they might find valuable." Backstrom Decl. ¶¶ 3–5.  In short, as this Court recognized in *NetChoice*, absent immediate relief, Meta will be forced "to make significant changes to [its] feeds," which will "fundamentally reorient [its] relationship with [its] users."  761 F. Supp. 3d at 1236.

**III.     The Remaining Factors Also Support an Injunction Pending Appeal.**

The remaining two factors—the balance of equities and public interest, which "merge" when the party opposing injunctive relief is [the government]," *California*, 173 F.4th at 1068–69—also both

strongly favor Meta.  The "fact that [Meta] ha[s] raised serious First Amendment questions compels a finding that . . . the balance of hardships tips sharply in [Meta's] favor."  *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (cleaned up); *see also Bonta III*, 152 F.4th at 1025 (similar).  "[I]t is always in the public interest to prevent the violation of a party's constitutional rights."  *California*, 173 F.4th at 1069; *see also X Corp. v. Bonta*, 116 F.4th 888, 904 (9th Cir. 2024) (same); *Harris*, 772 F.3d at 583 (similar).  And as this Court previously held, "there is a strong [public] interest in maintaining a free flow of speech."  *NetChoice*, 761 F. Supp. 3d at 1236.  There remains "great value in testing [SB 976] through appellate review" while SB 976's constraints upon the "free flow of speech" are temporarily enjoined to avoid a significant impact on Meta's services used by *billions* of users.  *Id*.  That logic remains true today—as the Ninth Circuit has still not yet had an opportunity to reach and consider the merits of a First Amendment challenge to SB 976's personalized feed restrictions.

### CONCLUSION

For the foregoing reasons, Meta respectfully requests that this Court enjoin Defendant from enforcing the Act's personalized feed restrictions against it pending final appellate resolution of Meta's appeal of this Court's August 5, 2026 Order; or, alternatively, to enjoin Defendant from enforcing those restrictions for a period of 30 days to permit the Ninth Circuit time to consider whether to grant its own injunction pending appeal.

DATED:  August 11, 2026

Respectfully submitted,

By:   */s/ Isaac D. Chaput*

Isaac D. Chaput (Bar No. 326923)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
(415) 591-6000
ichaput@cov.com

Alexander L. Schultz (Bar No. 340212)
Max A. Cherman (Bar No. 353565)
**COVINGTON & BURLING LLP**

PLAINTIFF META PLATFORMS, INC.'S MOTION FOR INJUNCTION PENDING APPEAL

1999 Avenue of the Stars
Los Angeles, California 90067-4643
(424) 332-4800
aschultz@cov.com

Mark W. Mosier (pro hac vice)
Teena-Ann V. Sankoorikal (pro hac vice)
Jeffrey E. Sandberg (pro hac vice)
Kuntal V. Cholera (pro hac vice)
Alexandra J. Widas (pro hac vice)
**COVINGTON & BURLING LLP**
850 Tenth Street, NW
Washington, D.C. 20001
(202) 662-6000
mmosier@cov.com
tsankoorikal@cov.com
jsandberg@cov.com
kcholera@cov.com
awidas@cov.com

*Attorneys for Plaintiff Meta Platforms, Inc.*

9