UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| META PLATFORMS, INC. | Civil Case No.: 5:25-cv-09792-EJD |
| Plaintiff, | **DECLARATION OF LARS BACKSTROM IN SUPPORT OF META'S MOTION FOR INJUNCTION PENDING APPEAL** |
| v. | |
| ROB BONTA, in his official capacity as Attorney General of California, | |
| Defendant | |

I, Lars Backstrom, declare as follows based on personal knowledge:

1.      I am the Vice President of Engineering at Meta Platforms, Inc. ("Meta").  I have been employed in that position since January 2017 and have been employed at Meta (formerly "Facebook") since September 2009.  I am over the age of 18 years and maintain an office at 1 Meta Way, Building 20 in Menlo Park, California.  I make this Declaration in support of Meta's Motion for Injunction Pending Appeal in the above-captioned matter.  I have personal knowledge of the matters set forth in this Declaration, and if called as a witness, I could and would testify under oath as follows.

2.      To comply with the SB976 personalization restrictions, Meta will have to radically alter the nature of the products Meta offers to many California-based users, edit the interface of many Meta products to eliminate user-facing references to personalization, inform many users that their experience on Meta's platforms will abruptly change, and deal with any technical glitches that may arise due to sudden changes to its source code—a host of burdens that would be for naught if the SB976 personalization restrictions are later found impermissible.

3.      Implementing the SB976 personalization restrictions will require Meta engineers, data scientists, and support teams to launch, monitor, and maintain pervasive changes to the design and operation of Meta's Facebook, Instagram, and Threads services——creating a California-specific version of those services that Meta would have to maintain in parallel to its general services.

4.      To start, personalized feeds are woven deeply into Meta's Facebook, Instagram, and Threads services.  The services are designed to provide users with the most relevant "connected" content from friends, pages, groups, or accounts they already follow, while also suggesting relevant "unconnected" or "suggested" public content from other sources that Meta determines users may find interesting, informative, or entertaining.  Within this ecosystem, users share and interact with curated content where their interactions serve as critical signals, but not the only signals, for refining what content each user is shown and in what order.

5.      Regarding the SB976 personalization restrictions, the required changes themselves, as I previously attested, will severely restrict Meta's ability to present affected users with content that they might find valuable, and noticeably diminish the user experience for affected users, in some cases potentially rendering Meta's services unrecognizable to those users.

2

DECLARATION OF LARS BACKSTROM IN SUPPORT OF META'S MOTION FOR INJUNCTION PENDING APPEAL

6.    Requiring Meta to comply with personalization restrictions that may later be found unconstitutional risks creating a whipsaw effect, which in turn can affect the quality of Meta's services. The work and risks involved in launching and maintaining—and potentially later reversing—such broad product changes is not trivial.  If legal developments render implementation of the required changes premature, the effort required to reverse required changes will not only necessitate additional effort from Meta personnel but more importantly, entail additional risk to the operability of its services for all users.

## A.    Pervasive Product Changes Required

7.    The SB976 personalization restrictions require Meta to launch and maintain an alternate user experience for California teens that diverges from many of the foundational aspects of the Facebook, Instagram, and Threads services.

8.    Meta displays personalized content across its products. Upon launching the Facebook, Instagram, or Threads apps, users are currently shown a "Home" tab that provides personalized content in the Feed (Facebook and Instagram), Stories (Facebook and Instagram) and For You feed (Threads) product surfaces.  Beyond their main landing surfaces, the Facebook, Instagram, and Threads services currently provide numerous additional tailored experiences across various surfaces, including the Facebook and Instagram Reels tabs' personalized short videos.

9.    Regarding Facebook, Instagram, and Threads, SB976 requires removing relevant suggested (unconnected) content from the main feeds of each; sorting the remaining connected content by, for example, recency, not relevance; disabling and hiding numerous personalization-specific controls or options; hiding and disabling some entire product surfaces; changing visual aspects of a service's user interface to be consistent with its reduced functionality, and ensuring consistent implementation of these changes across each service's iOS mobile app, Android mobile app, and web interface.

10.    Apart from changes to how these feeds organize content and how suggested content is selected on each of Facebook, Instagram and Threads, other less obvious, but still important, changes to the settings, visual design, and explanatory text of the services would be required.  Even subtle user interface elements suggesting personalization must be relabeled for affected users. For example, where a feed provides users two sorting options and one is personalized, the personalized option would be hidden too to avoid inadvertently presenting the user with a non-existent option.

11. The following list describes in more detail some of the types of changes Meta will most likely need to launch to comply with the SB976 personalization restrictions. This list is not exhaustive:

    a. In Facebook Feed, remove posts suggesting relevant content from accounts, pages, and groups a user is not connected to, and order the remaining content by, for example, recency, not relevance.

    b. In the Instagram Reels tab, replace the personalized chain of recommended short-form videos with a generic chain of non-personalized short-form videos and hide personalization-related controls.

    c. In the Threads Following feed, default to sorting posts by, for example, recency rather than relevance and hide the personalized "Top" sort option.

12. Transparently signaling the nature of required product changes to affected users further requires that Meta add notices to affected surfaces, linking the affected users to an explanation of SB976's restrictions on how Meta is allowed to present content to users and the steps an affected covered user can take to request parental consent to view personalized feeds. Moreover, Meta must launch a personalization-specific consent flow that enables affected users to request and receive permission to view personalized content and allows parents to receive and act on such requests.

**B.    Risks of Implementing and Reversing Changes**

13. The breadth of the required changes to Meta's Facebook, Instagram, and Threads services enhances the risk of unanticipated technical issues or "bugs" resulting from the required changes to both affected and unaffected users. Meta would be required to launch changes to its core services and many smaller personalized features across Facebook, Instagram, and Threads, each of which would require changes across its iOS, Android, and web interfaces. Discovering and resolving any bugs would require further work from Meta support teams, data scientists, and software engineers to plan, code, test, and launch appropriate fixes.

14. Although significant product changes often involve substantial engineering effort and a risk of unintended consequences, those risks are typically justified by expected long-term improvements to the product and user experience. Here, however, Meta would be required to undertake comparable work and assume comparable risks to remove existing functionality, with no corresponding long-term

Docusign Envelope ID: 041AA2DD-3F9F-8F1C-824D-91CA398BAE7A

product benefit and the possibility that the challenged requirements could later be stayed or overturned on appeal.  If that should happen, rolling back the changes could not be accomplished without further work and risks, as if by pressing an "undo" change button.  Interdependent parts of Meta's code base will inevitably have changed by the time a higher court's decision is issued.  And new notices may be needed to explain to users what might otherwise be a potentially jarring change back.  So reversing the changes required by SB976 will likely require some amount of further testing, monitoring, and remediation of bugs.

**Conclusion**

15.    Significant changes to Meta's services, such as those necessitated by SB976, require substantial technical effort to launch and maintain, and accompanying bugs risk the operability of Meta's services for all users.  If further legal developments render premature Meta's compliance with the SB976 personalization requirements, reversing the changes will involve additional effort and risk to the operability of Meta's services.

*        *        *

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: _August 10, 2026_____

Signed by:

By: _Lars Backstrom_____
AF88A24E0D5F4C7...

Lars Backstrom

DECLARATION OF LARS BACKSTROM IN SUPPORT OF META'S MOTION FOR INJUNCTION PENDING APPEAL