ROB BONTA
Attorney General of California
TODD GRABARSKY
LARA HADDAD
Supervising Deputy Attorneys General
ASHA ALBUQUERQUE (SBN 332901)
WILLIAM BELLAMY (SBN 347029)
SHIWON CHOE (SBN 320041)
CHRISTOPHER J. KISSEL (SBN 333937)
SAMUEL SOKOLSKY (SBN 348173)
MEGHAN H. STRONG (SBN 324503)
ZELDA VASSAR (SBN 313789)
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3584
Fax: (415) 703-5480
E-mail: Asha.Albuquerque@doj.ca.gov
William.Bellamy@doj.ca.gov
Shiwon.Choe@doj.ca.gov
Christopher.Kissel@doj.ca.gov
Samuel.Sokolsky@doj.ca.gov
Meghan.Strong@doj.ca.gov
Zelda.Vassar@doj.ca.gov
*Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **TIKTOK INC, et al.,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**ROB BONTA, in his official capacity as Attorney General of California,**<br><br>Defendant. | Case No. 5:25-cv-09789-EJD<br><br>**DEFENDANT'S OMNIBUS OPPOSITION TO PLAINTIFFS' MOTIONS FOR AN INJUNCTION PENDING APPEAL** |

| | |
|---|---|
| **META PLATFORMS, INC.,**<br>Plaintiff,<br>**v.**<br>**ROB BONTA, in his official capacity as Attorney General of California,**<br>Defendant. | Case No. 5:25-cv-09792-EJD<br><br>**DEFENDANT'S OMNIBUS OPPOSITION TO PLAINTIFFS' MOTIONS FOR AN INJUNCTION PENDING APPEAL** |
| **GOOGLE LLC et al.,**<br>Plaintiffs,<br>**v.**<br>**ROB BONTA, in his official capacity as Attorney General of California,**<br>Defendant. | Case No. 5:25-cv-09795-EJD<br><br>**DEFENDANT'S OMNIBUS OPPOSITION TO PLAINTIFFS' MOTIONS FOR AN INJUNCTION PENDING APPEAL** |

**TABLE OF CONTENTS**

INTRODUCTION ........ 1

BACKGROUND ........ 2

LEGAL STANDARD ........ 4

ARGUMENT ........ 4

I. Plaintiffs Have Provided No Argument or Evidence Not Already in the Record to Show That They Are Entitled to Injunctions Pending Appeal ........ 4

A. Plaintiffs Cannot Show a Likelihood of Success on the Merits ........ 5

B. Plaintiffs Cannot Show That Implementation of the Law's Requirements Risks Irreparable Injury ........ 8

C. The Balance of Equities and the Public Interest Weigh Against Injunctions ........ 9

II. The Circumstances Justifying an Injunction Pending Appeal in *NetChoice* are Inapplicable Here ........ 11

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**CASES**

*All. for the Wild Rockies v. Cottrell*
632 F.3d 1127 (9th Cir. 2011)............ 4

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*
148 F.4th 648 (9th Cir. 2025)............ 10

*Arce v. Douglas*
793 F.3d 968 (9th Cir. 2015)............ 7

*Council for Responsible Nutrition v. James*
159 F.4th 155 (2d Cir. 2025)............ 9

*Fla. Bar v. Went for It, Inc.*
515 U.S. 618 (1995)............ 10

*Goldie's Bookstore, Inc. v. Super. Ct.*
739 F.2d 466 (9th Cir. 1984)............ 9

*Matsumoto v. Labrador*
122 F.4th 787 (9th Cir. 2024)............ 8

*Minority Television Project, Inc. v. FCC*
736 F.3d 1192 (9th Cir. 2013) (en banc)............ 7, 8

*Moody v. NetChoice, LLC*
603 U.S. 707 (2024)............ 2, 6, 12

*NetChoice, LLC v. Bonta*
761 F. Supp. 3d 1202 (N.D. Cal. 2024) ("*NetChoice I*")............ 7, 10, 11

*NetChoice v. Bonta*
761 F. Supp. 3d 1232 (N.D. Cal. 2025) ("*NetChoice II*")............ *passim*

*NetChoice, LLC v. Bonta*
152 F.4th 1002 (9th Cir. 2025) ("*NetChoice III*")............ *passim*

*S. Bay United Pentecostal Church v. Newsom*
959 F.3d 938 (9th Cir. 2020)............ 4

*Sable Commc'ns of Cal., Inc. v. FCC*
492 U.S. 115 (1989)............ 7, 10

*Stormans, Inc. v. Selecky*
586 F.3d 1109 (9th Cir. 2009)............ 10

**TABLE OF AUTHORITIES**
**(continued)**

*Turner Broad. Sys., Inc. v. FCC*
520 U.S. 180 (1997) ........ 7, 10

*Valle del Sol, Inc. v. Whiting*
732 F.3d 1006 (9th Cir. 2013) ........ 8

*Williams-Yulee v. Fla. Bar*
575 U.S. 433 (2015) ........ 10

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I ........ *passim*

**STATUTES**

Cal. Health & Safety Code § 27001(a) ........ 2, 4

Cal. Health & Safety Code § 27002(b)(2) ........ 2, 4

Cal. Health & Safety Code § 27002(b)(4) ........ 2, 4

**OTHER AUTHORITIES**

U.S. Surgeon Gen., *Social Media and Youth Mental Health* (2023), https://www.hhs.gov/sites/default/files/sg-youth-mental-health-social-media-advisory.pdf ........ 10

## INTRODUCTION

This Court issued a well-reasoned ruling denying Plaintiffs' motions for preliminary injunctions ("MPIs")—a ruling based on a robust record, hundreds of pages of briefing, dozens of expert declarations and rebuttals, hundreds of exhibits of documentary evidence and deposition transcripts, helpful input from an array of amici with various expertise in this area, and more than five hours of oral argument. Plaintiffs nevertheless insist that they are entitled to an injunction pending appeal that would prevent the Attorney General's enforcement of the addictive feed provisions of the Protecting Our Kids From Social Media Addiction Act, Senate Bill 976 (SB976). But nothing has changed since the Court issued its ruling less than two weeks ago. Plaintiffs offer no new arguments or evidence to demonstrate that they are likely to prevail on the merits of the case or that complying with SB976 would cause them irreparable injury. Nor can Plaintiffs show that the public interest is served by an injunction. Their only argument is that SB976 impermissibly regulates protected speech—an argument that this Court has already considered and rejected. The public interest therefore tips sharply in the Attorney General's favor. And that is especially true in this case, where the Attorney General presented an abundance of evidence establishing that Plaintiffs' addictive algorithms cause children numerous harms, including negative self-image, poor sleep, anxiety, and depression. California should not be prevented from enforcing its duly enacted law that undoubtedly furthers its paramount interest in protecting the health and wellbeing of children.

Plaintiffs' heavy reliance on this Court's injunction pending appeal in the previous round of SB976 litigation does not change this conclusion. In that earlier litigation, the Court denied NetChoice's MPI against certain provisions of SB976 but granted a 30-day injunction pending appeal in the context of a case involving "expedited briefing and arguments from the parties." *NetChoice v. Bonta*, 761 F. Supp. 3d 1232, 1234 (N.D. Cal. 2025) ("*NetChoice II*"). And the Court was concerned about resolving "novel, difficult, and important" issues related to SB976's "personalized feed provisions." *Id.* at 1236. But the circumstances are vastly different here. In this case, unlike in *NetChoice II*, the Court resolved Plaintiffs' MPIs based on a voluminous record and substantial briefing. What's more, this Court's resolution of Plaintiffs' motions,

unlike in *NetChoice II*, has the benefit of recent Ninth Circuit guidance, which makes clear that "an algorithm that 'respond[s] solely to how users act online,' merely 'giving them the content they appear to want,' probably is not expressive." *NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1014 (9th Cir. 2025) ("*NetChoice III*") (quoting *Moody v. NetChoice, LLC*, 603 U.S. 707, 736 n.5 (2024); *id*. at 746 (Barrett, J., concurring)). This Court faithfully applied that guidance to the record the parties developed in this case, and thus there is no need for an injunction pending appeal. Plaintiffs' motions should therefore be denied.

**BACKGROUND**

The Court is well familiar with the facts and procedural background of this case. The Attorney General therefore only presents a summary of the background pertinent to the motions for injunction pending appeal that are presently before the Court.

On September 20, 2024, Governor Gavin Newsom signed SB976 into law. NetChoice, an association of technology companies, initially filed suit seeking to block SB976, and—after an appeal—the Ninth Circuit issued a mandate on November 14, 2025, allowing certain provisions of SB976 to go into effect. *NetChoice, LLC v. Bonta*, Case No. 25-146, ECF No. 76 (9th Cir. 2025). On November 13, 2025, Plaintiffs filed the present lawsuits against the Attorney General and requested an injunction that would prevent several of the same provisions of SB976 at issue in the just-completed Ninth Circuit litigation from being applied to them: namely, Cal. Health & Safety Code §§ 27001(a), 27002(b)(2), and 27002(b)(4)), which together regulate Plaintiffs' ability to use "addictive feeds" with respect to minor users of Plaintiffs' platforms. Shortly thereafter, Plaintiffs filed MPIs. Case No. 25-cv 09789, ECF No. 20; Case No. 25-cv-09792, ECF No. 19; Case No. 25-cv-09795, ECF No. 23.

Over the next seven months, the parties took discovery and presented substantial briefing and evidence to the Court. On February 20, 2026, the Attorney General filed his 50-page omnibus opposition brief, along with more than 300 internal documents and deposition transcripts he obtained from Plaintiffs in discovery, which helped to explain the inner workings of each of Plaintiffs' feed personalization algorithms, as well as Plaintiffs' own understanding of the way their personalized feeds would cause harm and otherwise affect children and other users on their

platforms. Case No. 25-cv 09789, ECF No. 45, 46; Case No. 25-cv-09792, ECF No. 63, 64; Case No. 25-cv-09795, ECF No. 47, 48 ("Opp'n"). In addition, the Attorney General submitted seven expert declarations—both from experts in computer science and algorithms and from experts opining on the harms and effects Plaintiffs' feeds have on children and other users. Case No. 25-cv 09789, ECF No. 45-1 to 45-7; Case No. 25-cv-09792, ECF No. 63-1 to 63-7; Case No. 25-cv-09795, ECF No. 47-1 to 47-7.

Additional briefing soon followed. For example, on April 10, Plaintiffs filed their reply briefs along with a total of 12 supporting declarations. Case No. 25-cv 09789, ECF No. 68; Case No. 25-cv-09792, ECF No. 90; Case No. 25-cv-09795, ECF No. 67. On May 22, upon request of the Court, the Attorney General submitted supplemental briefing. Case No. 25-cv 09789, ECF No. 90; Case No. 25-cv-09792, ECF No. 111; Case No. 25-cv-09795, ECF No. 89. Along with that supplemental briefing, the Attorney General also submitted seven rebuttal declarations and additional documents and exhibits. *Id*. And on June 2, Plaintiffs filed their supplemental briefing along with 6 rebuttal declarations of their own. Case No. 25-cv 09789, ECF No. 94; Case No. 25-cv-09792, ECF No. 116; Case No. 25-cv-09795, ECF No. 95.

On top of the Attorney General's briefing and evidence, seven amici filed briefs in opposition to Plaintiffs' MPIs. *See* Case No. 25-cv 09789, ECF No. 60; Case No. 25-cv-09792, ECF No. 75; Case No. 25-cv-09795, ECF No. 57. Those amici include a multistate coalition of 25 states as diverse as New York and Utah; groups representing pediatricians, child psychologists, school administrators and teachers; children's advocacy groups; an internet privacy group; and law and technology scholars.

This Court held a hearing on June 10, on all three MPIs, in which the parties presented oral argument for more than five hours. Even after that hearing, on June 12, Plaintiffs filed still more supplemental briefing along with additional rebuttal declarations. Case No. 25-cv 09789, ECF No. 102; Case No. 25-cv-09792, ECF No. 122; Case No. 25-cv-09795, ECF No. 101.

On August 5, this Court denied Plaintiffs' MPIs. Case No. 25-cv 09789, ECF No. 106; Case No. 25-cv-09792, ECF No. 126; Case No. 25-cv-09795, ECF No. 105 (the "Order"). The Court noted that it was merely denying Plaintiffs' request for "a *preliminary* injunction" based on

the current record, and that its assessment of Plaintiffs' claims could change with "further factual development." Order at 22. A few days later, Plaintiffs appealed that ruling and each moved for injunctions against enforcement of §§ 27001(a), 27002(b)(2), and 27002(b)(4) pending those appeals. Case No. 25-cv 09789, ECF No. 111 ("TikTok IPA"); Case No. 25-cv-09792, ECF No. 131 ("Meta IPA"); Case No. 25-cv-09795, ECF No. 109 ("YouTube IPA").

## LEGAL STANDARD

"In evaluating a motion for an injunction pending appeal, [courts] consider whether the moving party has demonstrated that they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in their favor, and that an injunction is in the public interest." *S. Bay United Pentecostal Church v. Newsom*, 959 F.3d 938, 939 (9th Cir. 2020). "The fact that a court previously found that a preliminary injunction was not warranted should carry significant weight, so the circumstances must be of unusual magnitude to justify a district court granting an injunction pending appeal after denying a preliminary injunction." *NetChoice II*, 761 F. Supp. 3d at 1236. Put differently, although the denial of an MPI does not necessarily prohibit a court from granting an injunction pending appeal, courts should "consider such a course of action" "only when the legal question raised is particularly important" and there are "'serious questions going to the merits.'" *Id*. (citing *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011)).

## ARGUMENT

### I. PLAINTIFFS HAVE PROVIDED NO ARGUMENT OR EVIDENCE NOT ALREADY IN THE RECORD TO SHOW THAT THEY ARE ENTITLED TO INJUNCTIONS PENDING APPEAL

Plaintiffs seek extraordinary relief. Although they have styled their motions as requests for injunctions pending appeal, they do not raise any new arguments or evidence that this Court has not already considered in denying their MPIs. By rehashing arguments that this Court has already rejected, Plaintiffs seek—in practical effect—reconsideration of the Court's earlier order. But Plaintiffs cannot show that their circumstances warrant that kind of "unusual" relief. *NetChoice II*, 761 F. Supp. 3d at 1236. They have failed to cite any intervening (or new) factual or legal developments that increase their likelihood of success on the merits—indeed, this Court has

already combed a mountain of evidence to conclude that Plaintiffs failed to meet their burden to obtain a preliminary injunction. Plaintiffs have likewise failed to muster any evidence of irreparable harm resulting from compliance with SB976 that might justify an injunction. And because the State has a substantial interest in enforcing its duly enacted laws—and in particular, its laws aimed at protecting children from harm—the balance of the equities and the public interest weigh heavily against injunctive relief.

### A. Plaintiffs Cannot Show a Likelihood of Success on the Merits

As an initial matter, Plaintiffs' motions fail to establish any likelihood of success on the merits of their various challenges to SB976. Their motions instead repeat arguments already made in their MPIs. But each of those arguments should be rejected—largely for the same reasons stated in this Court's August 5 order.

For example, Plaintiffs each argue that SB976 burdens protected expression. That argument fails. As this Court has already explained in a well-reasoned order, at this stage of the litigation, none of the Plaintiffs has yet presented sufficient evidence to establish that "their personalized feeds are 'expressive.'" Order at 8. To the contrary, the Court considered the substantial evidence put forward by each Plaintiff and found that "Plaintiffs are not making any decisions about what content will be 'interesting,' because they are merely relying on predictive modelling to assess what users' characteristics and history on the platform suggest will keep these same users engaged." *Id.* As the Court explained, "[t]his decision is not an 'expressive' message; it is merely a mirror that reflects back to users their own perceived interests." *Id.*

Plaintiffs offer no persuasive reason to revisit that conclusion. They instead argue (again) that their decisions to show content that is "interesting, relevant, and valuable" (YouTube IPA at 6) or "informative and/or entertaining" (TikTok IPA at 5) is itself "expressive." TikTok argues that this "finding should compel the legal conclusion that the algorithm operates to convey the platform's own expressive message about the content of the compilations it generates." TikTok IPA at 5. YouTube similarly argues that "YouTube's use of a tool (here, an algorithm) to achieve its editorial goal does not eliminate First Amendment protection." YouTube IPA at 6. But these arguments were already before this Court and ignore this Court's ultimate finding—that, as a

factual matter, TikTok, Meta, and YouTube are not actually making any decisions about what content is interesting, relevant, valuable, informative, or entertaining. Rather, the algorithms each act as a "mirror that reflects back to users their own perceived interests." Order at 8. And given that factual finding, there is no reason to doubt this Court's legal conclusion that Plaintiffs' algorithms are not protected expression. Indeed, the Ninth Circuit suggested as much in *NetChoice III*, where it explained—in the context of an earlier case challenging SB976—that "an algorithm that 'respond[s] solely to how users act online,' merely 'giving them the content they appear to want,' probably is not expressive." 152 F.4th at 1014 (quoting *Moody*, 603 U.S. at 736 n.5; *id*. at 746 (Barrett, J., concurring)).

This Court should likewise reject YouTube's next argument, which contends that SB976 burdens protected speech because it restricts minor users' right to receive information and ideas. YouTube IPA at 11–12. That argument cannot be squared with this Court's previous findings. As the Court has already explained, "SB 976 does not require Plaintiffs to remove content from their platforms." Order at 18. Instead, "minor users remain free to search for specific content, thereby receiving information and ideas." *Id*. The upshot is that SB976 only restricts YouTube's algorithmically-generated compilations—which are not expressive, *see supra* pp. 5–6—and does not place any meaningful burden on minor users' ability to receive content on Plaintiffs' platforms, *see id.* at 19 (concluding that "users can still access content that might otherwise appear in their personalized feed by manual search").

Meta's separate argument fails for similar reasons. It argues that SB976 burdens its right to disseminate fully protected speech, regardless of whether its feed is expressive. Meta IPA at 4. That is wrong. SB976 does not, in any way, prevent Meta from publishing user posts or restrict users' speech—that is, the "content that might otherwise appear in [Meta's] personalized feed" remains available to users, who can access that content by, for example, performing a "manual search." Order at 19. SB976 instead merely restricts Meta's algorithmically-generated compilations that are created based on minor users' personal and behavioral data. And this Court has already rightly concluded that because "personalization efforts that rely strictly on user preferences" to create an algorithmic feed do not convey any expressive message, that resulting

feed is not "fully protected speech." Order at 19–20. The Court should accordingly reject Meta's suggestion that SB976 somehow burdens the dissemination of First Amendment speech.

Nor should this Court accept YouTube's and Meta's arguments that SB976 imposes content-based restrictions that cannot satisfy any level of heightened scrutiny. YouTube IPA at 12–14; Meta IPA at 6–7. This Court has previously declined to reach that issue because SB976 does not implicate protected expression, and it need not resolve the issue here. But if it does reach the issue, the Court should reject those platforms' claims for the reasons given in the Attorney General's past briefing. *See* Opp'n at 39–48. That is, as the Attorney General has explained, SB976 is content neutral because its regulations make no distinction based on the message that might be conveyed in Plaintiffs' algorithmic feeds, meaning the law is subject to at most intermediate scrutiny. *See NetChoice III*, 152 F.4th at 1015–16 (rejecting claim that other provisions of SB976 are content-based). SB976 clearly satisfies both intermediate and strict scrutiny. *See* Opp'n 45–48. It serves the undeniably compelling interest of protecting children's health. *See, e.g.*, *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989) (government interest in protecting physical and psychological well-being of minors is "compelling"); *NetChoice, LLC v. Bonta*, 761 F. Supp. 3d 1202, 1227 (N.D. Cal. 2024) ("*NetChoice I*") (same); *accord* Hr'g Tr. 48, 80. And it is narrowly tailored. *See, e.g.*, *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 189–196, 208–225 (1997) (upholding law and rejecting arguments that plaintiff expert opinions or proposed alternatives undermined law); *Minority Television Project, Inc. v. FCC*, 736 F.3d 1192, 1198–1210 (9th Cir. 2013) (en banc) (similar).

YouTube's final argument also fails. It again argues that SB976's default restrictions are void for vagueness because of the statute's use of the phrase "verified parent." YouTube IPA at 14. But this Court previously rejected that argument—for good reason. A statute is impermissibly vague only if it "fails to provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement." *Arce v. Douglas*, 793 F.3d 968, 988 (9th Cir. 2015)). Here, the Court correctly found that "verified" is "readily understood and has a plain meaning" and "provides notice to operators of the subject services or applications that they must verify a person's status as a minor's 'parent' before

modifying the default settings." Order at 22. Although YouTube insists that verification of parental status is impermissibly vague, its argument ignores controlling caselaw that an "imprecise but comprehensible normative standard" is not void for vagueness. *Matsumoto v. Labrador*, 122 F.4th 787, 805 (9th Cir. 2024) (citing *Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006, 1020 (9th Cir. 2013)); *accord, e.g.*, *Minority Television*, 736 F.3d at 1210–11.

In sum, the Court should reject Plaintiffs' arguments on the merits for the same reasons it did in its August 5 order, as well as those set forth above and contained in the Attorney General's substantial briefing and evidence. And because Plaintiffs have failed to show that they are likely to succeed on the merits, this Court can and should deny their demands for an injunction pending appeal for this reason alone. *See* Order at 7–22 (denying MPIs based on the Court's merits analysis).

### B. Plaintiffs Cannot Show That Implementation of the Law's Requirements Risks Irreparable Injury

In any event, Plaintiffs also have not shown that they will suffer irreparable harm by complying with the addictive feed provisions of SB976 while the Ninth Circuit considers Plaintiffs' appeals. Plaintiffs primarily argue that they will suffer irreparable harm if they are required to comply with SB976 because—in their view—that law implicates important First Amendment concerns. But that argument ignores this Court's conclusion that Plaintiffs' feeds do not involve protected expression. *See* Order at 8. Because "Plaintiffs themselves are not making any determination about what is 'interesting' when they rely on [their] predictive modelling" and "do not otherwise seek to convey an expressive message through their personalized feeds," *id.*, SB976's restrictions on those feeds cannot—as Plaintiffs contend—threaten "[t]he loss of First Amendment freedoms." Meta IPA at 7 (internal quotation marks omitted).

Nor should this Court credit Plaintiffs' claims that they will be irreparably harmed absent an injunction because they will be forced to make significant changes to their feeds. Meta IPA at 7, YouTube IPA at 14, TikTok IPA at 10; *see also* YouTube IPA at 15, TikTok IPA at 10 (arguing that they will be forced to spend significant money and resources to come into compliance with SB976). At the outset, "ordinary compliance costs are typically insufficient to

constitute irreparable harm." *Council for Responsible Nutrition v. James*, 159 F.4th 155, 171 (2d Cir. 2025) (citation omitted). And even if compliance costs *could* rise to the level of irreparable injury, Plaintiffs have failed to provide any estimate—much less proof—of this supposed cost. As the Ninth Circuit has explained, "[s]peculative injury does not constitute irreparable injury," and thus Plaintiffs' meager submission cannot justify their requested injunction. *Goldie's Bookstore, Inc. v. Super. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984).

That is especially true in this case, where evidence in the record contradicts Plaintiffs' speculation. As the expert evidence shows, compliance with the Act's requirements is both "technologically feasible and not onerous based on technology that is already in widespread use." Egelman Decl. ¶ 40. Complying with SB976's addictive feed provisions "involves simply modifying the algorithms that are already being used to curate content." Egelman Decl. ¶ 41. Implementing algorithms that do not use information provided by the minor or from the minor's device—for example, displaying posts chronologically instead of prioritizing the feed based on engagement metrics—"*should not be particularly onerous for social media providers to implement*; indeed, some social media networks already offer users the choice over how to algorithmically curate their feeds." Egelman Decl. ¶ 41 (emphasis added). Further, Plaintiffs are "already required to comply with substantially similar provisions in other jurisdictions," including in the European Union, where "large platforms are required to offer choices surrounding the algorithms used to curate content feeds." Egelman Decl. ¶ 42.

The bottom line is that Plaintiffs' claims of irreparable harm fall short. SB976 was signed into law on September 20, 2024. And it strains credulity to believe that Plaintiffs—three of the largest technology companies in the world— could be irreparably harmed by complying with a statute that they have known about for *nearly two years*. This Court should accordingly deny Plaintiffs' motions—both because their claims fail on the merits, and because they cannot show that they will be irreparably harmed absent an injunction pending appeal.

**C. The Balance of Equities and the Public Interest Weigh Against Injunctions**

Plaintiffs' motions should also be denied for equitable and public interest reasons. Preventing the State from enforcing provisions of SB976 that the Court has already concluded are

likely constitutional would harm the public interest because it would hinder the State's ability to protect the mental and physical health of children—a "compelling" government interest. *See Sable*, 492 U.S. at 126; *NetChoice I*, 761 F. Supp. 3d at 1227 (N.D. Cal. 2024); Hr'g Tr. 48, 80; *see also, e.g.*, *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 148 F.4th 648, 656 (9th Cir. 2025) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). And Plaintiffs cannot offer any persuasive public interest rationale to counterbalance the State's compelling interest. As Plaintiffs' addictive feeds do not amount to protected expression, SB976's regulation of those feeds does not implicate any First Amendment concerns. Moreover, "simply raising a serious First Amendment claim is not enough to tip the hardship scales." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (internal quotations and brackets omitted).

Plaintiffs nevertheless contend that the equities weigh in their favor, with at least one Plaintiff suggesting that the State's interest in SB976 is modest "because the State has failed to show *any* line—whether causal or correlative—between [feed] personalization and harm to minors." YouTube IPA at 13. First, Plaintiffs conflate the evidentiary standard required to establish either a substantial or compelling state interest. But that argument fails as both a legal and a factual matter. To start, States do not need "proof by documentary record" to establish even a compelling governmental interest, *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 447 (2015), and they can "justify speech restrictions by reference[] to," for example, "history, consensus, and 'simple common sense.'" *Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 628 (1995); *Turner*, 520 U.S. at 211–12 (whether harms were in fact caused by activity targeted by law was for Legislature to determine, and "[t]he question is not whether [Legislature], as an objective matter, was correct" but only "whether the legislative conclusion was reasonable," and if so, "summary judgment for defendants[] is appropriate regardless of whether the evidence is in conflict").

In any event, the Attorney General has presented abundant evidence demonstrating a causal link between Plaintiffs' addictive feeds and an ongoing array of harms to children. *See, e.g.*, Opp'n at 20–25; Christakis Rebuttal Decl. ¶¶ 29, 47; Radesky Rebuttal Decl. ¶¶ 5–6; Telzer Rebuttal Decl. ¶¶ 19–22, 99–104; Twenge Rebuttal Decl. ¶¶ 18–21; *see also* U.S. Surgeon Gen.,

*Social Media and Youth Mental Health* 5–10 (2023), https://www.hhs.gov/sites/default/files/sg-youth-mental-health-social-media-advisory.pdf (Sokolsky Decl. Exh. 15) (cited by SB976 § 1(c)). Problematic and addictive social-media use have been linked to sleep disruption; diminished attentional capacity; lower working memory; increased impulsivity; ADHD; poor school performance; depression; anxiety; body-dysmorphic disorder and eating disorders; and suicide and self-harm—and these problems are specifically exacerbated by addictive personalized feeds. *See* Opp'n at 22. Further demonstrating this causal link, the Attorney General has presented evidence that when addictive personalized feeds are replaced with non-addictive feeds, the time users spend on social-media platforms decreased, while self-regulation increased. *See id*. at 25. And reduction of time on internet platforms has been found to improve mental-health outcomes, with less anxiety and depression, less sleep deprivation, lower emotional and behavioral difficulties, and higher happiness and life satisfaction. *See id*.

## II. THE CIRCUMSTANCES JUSTIFYING AN INJUNCTION PENDING APPEAL IN *NETCHOICE* ARE INAPPLICABLE HERE

Although this Court has already found that Plaintiffs are unlikely to prevail on the merits of their claims, they nevertheless argue that an injunction pending appeal is appropriate, citing this Court's earlier decision in *NetChoice II*, 761 F. Supp. 3d at 1236. But that earlier injunction arose from extraordinary circumstances that are not present here.

First, the timing considerations are vastly different in the present case. *NetChoice I* was decided on December 31, 2024—just a few months after SB976 was signed into law and one day before significant provisions of the law were supposed to take effect. The Court therefore had little choice but to resolve NetChoice's claims based on "expedited briefing and arguments from the parties," *NetChoice II*, 761 F. Supp. 3d at 1234, and the record was necessarily sparse and lacking the kind of information necessary to adjudicate the "'fact intensive' claims about all of [NetChoice's] members' algorithms," *NetChoice III*, 152 F.4th at 1014. That context bears little resemblance to this one. At this point, SB976 has been signed into law for nearly two years, SB976 has been the subject of litigation at the Ninth Circuit, and the parties spent over six months developing "a detailed factual record" (YouTube IPA at 2)—including information specific to

each of Plaintiffs' algorithms. Using that record, the parties submitted five rounds of briefing spanning hundreds of pages, including additional supplemental briefing on the "black box" question of how Plaintiffs' personalized algorithms work. And based on this robust record, the Court found that no Plaintiff had shown that its algorithm rose to the level of First Amendment-protected expression. Given this context, this case does not present circumstances of such "unusual magnitude to justify a district court granting an injunction pending appeal after denying a preliminary injunction." *NetChoice II*, 761 F. Supp. 3d at 1236.

This case is also much different from *NetChoice II*, because the Court resolved that case without the benefit of the Ninth Circuit's decision in *NetChoice III*. That is a material development. Although the Ninth Circuit resolved *NetChoice III* on standing grounds, it nevertheless provided significant direction for how courts should evaluate claims like those at issue here—that is, as-applied First Amendment challenges premised on specific algorithms. *See* 152 F.4th at 1013. In particular, the Ninth Circuit explained that "the unique design of each platform and its algorithm affects whether the algorithm at issue is expressive." *Id.* at 1014. In other words, "the more an algorithm implements human editorial directions, the more likely it is to be expressive for First Amendment purposes"; but "[o]n the other hand, an algorithm that 'respond[s] solely to how users act online,' merely 'giving them the content they appear to want,' probably is not expressive." *Id*. (quoting *Moody*, 603 U.S. at 736 n.5). Unlike in *NetChoice II*, then, the Court's preliminary injunction decision in this case did not need to tread "novel" or "'unexplored'" First Amendment territory. 761 F. Supp. 3d at 1236. The Court instead merely followed the Ninth Circuit's guidance, analyzing each platform's unique design in determining that the algorithms at issue were not expressive. *See* Order at 8–17. There is accordingly no need to "allow the opportunity for appellate review of these weighty issues before the law goes into effect." *NetChoice II*, 761 F. Supp. 3d at 1246. The Ninth Circuit has already weighed in, and its guidance confirms that Plaintiffs have not substantiated their First Amendment claims on the record presented.

**CONCLUSION**

The motions for injunctions pending appeal should be denied.

Dated: August 14, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
TODD GRABARSKY
LARA HADDAD
Supervising Deputy Attorneys General

*<u>/s/ Samuel Sokolsky</u>*
ASHA ALBUQUERQUE
WILLIAM BELLAMY
SHIWON CHOE
CHRISTOPHER J. KISSEL
SAMUEL SOKOLSKY
MEGHAN H. STRONG
ZELDA VASSAR
Deputy Attorneys General
*Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of California*